**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| SALLYE PURYEAR, | * |
| | * |
| Plaintiff, | * |
| v. | * |
| | *   Civil Action No. AW-05-2993 |
| DONALD C. WINTER,[1] | * |
| Secretary of the Navy, | * |
| | * |
| Defendant. | * |

\* \* \* \* \*

## **MEMORANDUM OPINION**

Sallye Puryear ("Puryear" or "Plaintiff") brings this action against Donald C. Winter in his capacity as Secretary of the United States Navy (the "Navy" or "Defendant"). Puryear seeks a writ of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651, to enforce the terms of a favorable administrative judgment stemming from prior employment discrimination claims. Currently pending before the Court is the Navy's Motion to Dismiss or for Summary Judgment [8] and Puryear's Cross-Motion for Summary Judgment [11]. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motions. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will deny Puryear's Cross-Motion for Summary Judgment and grant the Navy's Motion for Summary Judgment.

**I.     FACTUAL & PROCEDURAL BACKGROUND**

This action arises out of employment discrimination complaints that Puryear, a former

---

[1] Although the Complaint properly named Gordon R. England as the original defendant, Donald C. Winter replaced England as Secretary of the Navy effective January 3, 2006. Pursuant to Fed. R. Civ. P. 25(d)(1), Donald C. Winter shall be substituted for Gordon R. England as the defendant to this action.

civilian employee of the Navy, filed with the Equal Employment Opportunity Commission ("EEOC") in 1999. Puryear, then a GS-12 Social Worker, alleged discrimination on the basis of race and retaliation in connection with her non-selection for the GS-13 position of Supervisory Social Worker. On March 29, 2002, during the course of the administrative proceeding, Puryear voluntarily retired. On July 29, 2002, after the Navy failed to comply with several of the Administrative Judge's ("AJ") orders, the AJ issued a default judgment in Puryear's favor, finding that she had been subjected to unlawful discrimination and that she was entitled to appropriate relief. In an Order of Remedies issued on December 8, 2002, the AJ ordered the Navy (1) to revise Puryear's personnel folder to reflect her retroactive placement in the GS-13 position; (2) to pay Puryear back pay encompassing the wage differential between the GS-12 and GS-13 positions; (3) to notify the Office of Personnel Management ("OPM") of Puryear's retroactive promotion so that her retirement benefits would be adjusted accordingly; (4) to pay Puryear $15,000 in compensatory damages; (4) to pay Puryear $22,288.73 in attorney's fees and costs; and (5) to post, in Puryear's former workplace, a Notice to Employees of their right to be free of unlawful discrimination. In January 2003, the Navy issued a Final Agency Decision ("FAD") adopting the EEOC decision and order.

In July 2003, Puryear's attorney sent a letter to the Navy stating that the Order of Remedies had not been fully complied with. In response, the Navy contacted Defense Finance and Accounting Systems ("DFAS"—the Navy's payroll agency) in an effort to resolve Puryear's complaints. By September 2003, DFAS made certain changes to Puryear's retirement account, and also demonstrated that Puryear's back pay award had been fulfilled for the pay period ending September 20, 2003. However, in February 2004, in another letter, Puryear's attorney complained that Puryear's retirement income *still* had not been adjusted to the GS-13 level. The Navy investigated

2

and determined that although OPM had been notified, in 2003, of Puryear's retroactive promotion, her benefits had not been adjusted because OPM employees had misplaced her file. Although the Navy requested additional time to resolve the matter, on April 8, 2004, Puryear filed an appeal with the EEOC's Office of Federal Operations ("OFO"), requesting an adjustment to her retirement annuity and compensation for the underpayments she had received. In addition, Puryear asserted that had not received any notification that the Navy had actually posted the required Notice to Employees and that several of Puryear's former coworkers had informed her that no such notice had been seen at the facility where she had been employed. From this, Puryear concluded that the notice had not been posted, and requested that the OFO enforce this portion of the AJ's order. Puryear also sought the attorney's fees and costs she had incurred in filing her appeal.

In its response, the Navy maintained that it had fully complied with the AJ's order, because all that the Navy was specifically required to do with respect to Puryear's retirement benefits was to notify the OPM of Puryear's retroactive promotion, an obligation that it had satisfied. The Navy also submitted the Declaration of Captain P.J. Barnett, the Director of Administration of Puryear's former workplace, averring that he had, in accordance with the AJ's order, personally posted the Notice to Employees in a locked bulletin board at the facility. In addition, during the pendency of Puryear's OFO appeal, the Navy was able to contact the OPM specialist newly assigned to the case, Mr. Richard Kaniuka. On April 20, 2004, Mr. Kaniuka sent Puryear a letter explaining that her retirement benefit had, finally, been adjusted to the GS-13 level, and that she would soon receive a lump-sum payment of $1,122, representing the accrued underpaid annuity amount, minus taxes. On June 1, 2005, the OFO issued a decision dismissing Puryear's appeal as moot. In its decision, the OFO specifically referenced Mr. Kaniuka's letter and noted that "since complainant's retirement

benefits have been adjusted and, having received no further communication from complainant, we dismiss her appeal as moot." (Def.'s Mot., Ex. 18, at 2.) The OFO also concluded that the Navy had posted the required Notice to Employees. With respect to Puryear's request for costs and attorney's fees, the OFO, apparently adopting the Navy's interpretation of its obligations under the AJ's order, concluded that "the agency complied with the terms of the AJ's decision, that is, it notified OPM on several occasions of the change in complainant's entitlement. Because the agency complied with the AJ's Order, we find that the complainant is not a prevailing party on appeal and, thus, is not entitled to attorney's fees." (*Id.*)

Following the OFO's dismissal of her appeal, Puryear filed a request for reconsideration. However, although her request was due on July 6, 2005, Puryear's request was not mailed until the following day, and the OFO deemed the request as filed on July 8, 2005. Although Puryear explained that the delay was caused by the "inordinate" amount of time it took to obtain documents from OPM and the Social Security Administration, the OFO found that "complainant has not provided an adequate justification for extending or waiving the 30-day time limitation period. . . . Therefore, complainant's request is being denied on the grounds that it was untimely filed." (Def.'s Mot., Ex. 20, at 1.) However, despite seemingly denying the request for reconsideration on the basis of its untimeliness, the OFO went on to say, confusingly, that "[a]fter *reconsidering* the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b)[2], and it is the decision of the Commission to deny the request." (*Id.* at 2)

---

[2]29 C.F.R. § 1614.405(b) provides that reconsideration may be granted upon a showing that: "(1) The appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) The decision will have a substantial impact on the policies, practices, or operations of the agency."

(emphasis added.)

After Puryear's reconsideration request was denied, she timely filed the instant action on November 3, 2005. Puryear alleges in her Complaint that, owing to the Navy's failure to forward a "Corrective Action" form to OPM, her retirement benefits have yet to be properly adjusted. Puryear also claims that the Navy's failure to adjust her retirement account has adversely affected her Social Security benefits. Finally, Puryear maintains that she was never told when or where the Notice to Employees was posted and that her former colleagues have never seen any such notice. Puryear seeks a writ of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651, to compel the Navy to (1) file the "Corrective Action" with the OPM; (2) compensate Puryear for the underpayment of her retirement benefits; (3) work with the Social Security Administration ("SSA") to adjust her Social Security payments; and (4) pay Puryear her costs and attorney's fees. On February 13, 2006, the Navy filed a Motion to Dismiss or for Summary Judgment. Puryear then filed an opposition and cross-motion for summary judgment. The motions have been fully briefed and are ready for disposition.

## II.   **SUMMARY JUDGMENT STANDARD**

When matters outside the pleadings are presented to the court, a Rule 12(b)(6) motion to dismiss shall be treated as a motion for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. *Nat'l Mortgage Warehouse, LLC v. Trikeriotis*, 201 F.Supp.2d 499, 502 (D. Md. 2002).  Where a party knows that materials outside the pleadings are before the court, that party is considered to have notice that the motion to dismiss may be treated as a motion for summary judgment. *Id.*  Both parties in this case present affidavits and/or other outside pleadings for the

5

Court's consideration.  As such, the Court will treat Defendant's motion as a Motion for Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir. 1993); *Etefia v. East Baltimore Comm. Corp.*, 2 F.Supp.2d 751, 756 (D. Md. 1998).  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1).  The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence."  *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted).  While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences.  *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

### III.  <u>ANALYSIS</u>

Plaintiff urges this Court to issue a writ of mandamus directing Defendant to comply with certain mandates of the EEOC's Order of Remedies that Plaintiff alleges remain unfulfilled. Defendant argues that Title VII's comprehensive remedial scheme preempts Plaintiff's mandamus action and that, in any case, Plaintiff has already received all the relief to which she is entitled. Defendant also maintains that it is entitled to summary judgment because Plaintiff's claims do not

fall within either of the two avenues of redress available to federal sector Title VII plaintiffs: (1) enforcement actions and (2) requests for de novo review. Defendant argues that this case is not cognizable as an enforcement proceeding because the prerequisite for bringing an enforcement action—an EEOC finding of employer noncompliance with a prior administrative decision—is absent here. With respect to the alternative avenue of redress—a request for complete de novo review—Defendant argues that Plaintiff has evinced an intention not to proceed down this path, presumably because de novo review would place the underlying discrimination finding, which stemmed from a default judgment, in jeopardy. The Court will address these arguments in turn.

    **A.**    **Plaintiff's request for a writ of mandamus under 28 U.S.C. § 1651**

The so-called "All Writs Act," 28 U.S.C. § 1651(a), provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The Act does not independently confer subject matter jurisdiction upon federal courts, but rather authorizes a federal court to issue a writ if there is an independent basis for subject matter jurisdiction. *In re Am. Honda Motor Co., Inc., Dealerships Relations Litig.*, 315 F.3d 417, 437 (4th Cir. 2003). However, when a separate statute specifically addresses the issue at hand, it is the statute, not the All Writs Act, that governs. *See Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32-34 (2002); *Penn. Bureau of Corrections v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985) ("Although [the All Writs] Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate."); *Honda Motor Co.*, 315 F.3d 437.

Here, Plaintiff contends that jurisdiction over her claims is conferred by Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and that the All Writs Act "backs up" that authority by providing a mechanism through which the Court can order Plaintiff's requested relief. (Pl.'s Opp. & Cross-Mot. For Summ. J. 6.) However, as noted above, a court's power to issue relief under the All Writs Act gives way when there is an applicable statute that expressly controls the issue; " before resorting to the authority of § 1651(a), a court must find that no statutory alternative exists for the same purpose." *U.S. v. Venneri*, 782 F. Supp. 1091, 1094 (D. Md. 1991).

In this case, Title VII provides that very "statutory alternative." Indeed, for federal employees such as Plaintiff, Title VII provides the exclusive remedy for claims of employment discrimination. *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976) (holding that Title VII "provides the exclusive remedy for claims of discrimination in federal employment"); *Middlebrooks v. Thompson*, 379 F. Supp. 2d. 774, 777 (D. Md. 2005) (dismissing claim under 42 U.S.C. § 1981 because "it is clear that Title VII represents the exclusive remedy for federal sector employees who wish to pursue claims of intentional discrimination in employment"); *Carlson v. U.S. Dept. of Health and Human Servs.*, 879 F. Supp. 545, 549 (D. Md. 1995) (disposing of the plaintiff's Fifth Amendment claim because, as a federal employee, Title VII provided the exclusive remedy for her employment discrimination claims). Moreover, even if Plaintiff's instant claims are characterized as actions to enforce compliance with an administrative decision, as distinct from "ordinary" employment discrimination claims, Title VII provides a mechanism by which an employee may bring an enforcement action. Thus, the Court will evaluate Plaintiff's claims under Title VII's comprehensive framework.

### B. <u>Title VII</u>

Defendant moves for summary judgment on Plaintiff's claims on the grounds that they are

not cognizable under Title VII. Specifically, Defendant argues that there are two types of civil actions available to federal sector employees seeking to challenge the administrative dispositions of their employment discrimination complaints: (1) requests for de novo review and (2) so-called "enforcement actions." With respect to the first type of proceeding, Defendant argues that Plaintiff's Complaint makes plain that she is not pursuing de novo review, as doing so would open the door for judicial scrutiny of the underlying finding of discrimination. With respect to the second, Defendant maintains that Plaintiff may not bring an "enforcement action" because, in the final administrative disposition of her claims, the OFO determined that Defendant had fully complied with the EEOC's earlier remedial award. For reasons set forth more fully below, the Court accepts Defendant's argument and finds that it is entitled to summary judgment.

In *Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006) (en banc), the Fourth Circuit explained that after there has been an OFO disposition of a federal employee's employment discrimination claims, that employee had "two separate avenues into federal court." First, an employee who is "aggrieved" by the OFO's decision may file a "civil action" seeking judicial review of her claim. *Id.* at 417; *see* 42 U.S.C § 2000e-16(c); 29 C.F.R. § 1614.407(c). This right of action is identical to that possessed by a private-sector employee who has received a right-to-sue letter. *See Chandler v. Roudebush*, 425 U.S. 840, 864 (1976). However, a necessary corollary to such an action is the requirement that the plaintiff place the employing agency's underlying discrimination at issue. *See Laber*, 438 F.3d at 423.[3] Alternatively, an employee may, under certain circumstances, seek judicial

---

[3] In *Laber*, the Fourth Circuit expressly overruled its prior rulings in *Pecker v. Heckler*, 801 F.2d 709 (4th Cir. 1986) and *Morris v. Rice*, 985 F.3d 143 (4th Cir. 1993), which the court stated "stand for the proposition that Title VII authorizes a federal employee to bring a civil action wherein he challenge only the [EEOC's] remedial award, but does not put his employing agency's underlying discrimination at issue." *Laber*, 438 F.3d at 418.

9

enforcement of the OFO's underlying decision. *Id.* at 417.

In the present case, it is indeed clear that Plaintiff does not seek de novo of her claims, but rather brings this litigation as an enforcement action. For instance, in her opposition brief, Plaintiff notes that she "seeks to fully *enforce* a 2002 decision in her favor by the EEOC." (Pl.'s Opp & Cross-Mot. For Summ. J. 6) (emphasis added.) In a subsequent pleading, Plaintiff emphasizes that she "seeks the remedy awarded but not granted by the agency." (Pl.'s Resp. to Def.'s Rep. Mem. 2.) In addition, the thrust of Plaintiff's Complaint is that Defendant has failed to comply with an EEOC decision and that this Court should direct Defendant to comply with that order. Therefore, Plaintiff's claims shall be construed as actions for enforcement. The critical issue, however, is whether Plaintiff's enforcement claims are properly before this Court. The relevant regulation provides:

> Where the [EEOC] has determined that an agency is not complying with a prior decision, or where an agency has failed or refused to submit any required report of compliance, the [EEOC] shall notify the complainant of the right to file a civil action for enforcement of the decision pursuant to Title VII . . . and to seek judicial review of the agency's refusal to implement the ordered relief . . . .

29 C.F.R. § 1614.503(g). As the above-quoted language plainly reflects, the right to file an enforcement action is contingent upon an EEOC determination that "an agency is not complying with a prior decision" or an agency's failure to submit a "required report of compliance." Neither of these prerequisites has been met here. In its June 1, 2005 Order, the OFO found that Defendant was in full compliance with the earlier Order of Remedies and dismissed Plaintiff's appeal as moot. In addition, Plaintiff has not alleged that Defendant failed to submit a required compliance report. Under these facts, Plaintiff's enforcement action cannot stand. Other courts which have considered the question of whether an enforcement action may brought in the absence of an EEOC

determination of agency noncompliance have also answered it in the negative. *See Timmons v. White*, 314 F.3d 1229, 1232 (10th Cir. 2003) ("Obviously, if [the plaintiff's] action constituted an enforcement action, the lack of an EEOC determination of non-compliance, *which is a prerequisite to such a suit*, would have rendered the grant of summary judgment in favor of Defendant appropriate on that ground.") (emphasis added); *Malek v. Leavitt*, ___ F. Supp. 2d ___, 2006 WL 1932673, *7 (D. Md. 2006) (granting summary judgment against the plaintiff's enforcement claims where EEOC expressly found that agency had complied with prior remedial order); *Adcock v. Roche*, 2006 WL 1285045, *6-7 (M.D. Ga. 2006) (same); *Tshudy v. Potter*, 350 F. Supp. 2d 901, 906 (D.N.M. 2004) ("In order for this Court to have jurisdiction over Plaintiff's enforcement action, there must have been an EEOC determination of non-compliance.")

### IV.   **CONCLUSION**

For all of the aforementioned reasons, Defendant's Motion for Summary Judgment [8] is GRANTED, while Plaintiff's Cross-Motion for Summary Judgment [11] is DENIED. An Order consistent with this Opinion will follow.


July 25, 2006                                                             /s/
Date                                                        Alexander Williams, Jr.
                                                            United States District Judge